IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.:  05-340 (RMC) |
| v. | : | |
| ERIC JEREL SCOTT, | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing.  For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant at the low end of the Guidelines range of 135 to 168 months.

## I.   BACKGROUND

On August 2, 2006, the defendant, Eric Jerel Scott, pled guilty to Count 8 of the Superceding Indictment, Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii).   The matter is set down for a sentencing hearing on October 19, 2006 at 9:30 a.m.

As part of his plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:   On or about July 20, 2005, a Metropolitan  Police Department ("MPD") Undercover Officer ("UC") contacted the defendant by telephone to arrange a purchase of cocaine base, commonly known as crack cocaine.  Upon contacting the defendant, arrangements were made to purchase approximately 31 grams of crack cocaine for nine hundred dollars in the parking lot of Hechinger's Mall located at 17th and

Benning Road, N.E., Washington, D.C. At approximately 6:14 p.m., the UC arrived at the Hechinger Mall parking lot, where he made contact with the defendant, Eric Jerel Scott, who was seated in a black Navigator. The UC pulled along side the defendant's vehicle, exited the UC vehicle and climbed into the passenger seat of the black Navigator. Once inside, the defendant gave the UC a quantity of white rock-like substance in exchange for $900 in pre-recorded MPD funds. The UC then exited the black Navigator and the defendant drove out of the area. The white rock-like substance purchased from the defendant was analyzed by the Drug Enforcement Administration's (DEA) laboratory, and was confirmed to be 30.8 grams of cocaine base, also known as crack cocaine.

On or about July 27, 2005, the same UC again telephoned the defendant and arranged to purchase a quantity of crack cocaine. Upon contacting the defendant, arrangements were made to purchase approximately 62 grams of crack cocaine for nineteen hundred dollars in the parking lot of Hechinger's Mall located at 17th and Benning Road, N.E., Washington, D.C. At approximately 7:00 p.m., the UC drove to the Hechinger Mall parking lot, and not finding the defendant there, called him. The defendant stated that he could not meet the UC yet because a storm had knocked out the power at his home. The defendant stated that he would contact the UC later in the evening to arrange the transaction. At approximately 9:00 p.m., the defendant contacted the UC by telephone and stated that he was ready to conduct the deal and meet the UC at the Hechinger Mall parking lot. Once at the parking lot, the UC again called the defendant who informed the UC that he had moved to a laundry mat across the street from the Hechinger Mall. The UC then drove to that location and observed the defendant walking towards the UC vehicle. The defendant entered the passenger's side of the UC vehicle, wherein the defendant

gave the UC a quantity of white rock-like substance in exchange for $1900 in pre-recorded MPD funds. The defendant then exited the UC vehicle and the UC drove out of the area. The white rock-like substance purchased from the defendant was analyzed by the DEA laboratory, and was confirmed to be 61.9 grams of cocaine base, also known as crack cocaine.

    On or about August 5, 2005, the same UC again telephoned the defendant and arranged to purchase a quantity of crack cocaine. Upon contacting the defendant, arrangements were made to purchase approximately 62 grams of crack cocaine for nineteen hundred dollars at the Wendy's restaurant located at the intersection of New York Avenue and Florida Avenue, N.E., Washington, D.C. At approximately 5:10 p.m., the UC drove to location, and, not finding the defendant there, called the defendant. The defendant stated that he would be at the location shortly. The UC then awaited the defendant's arrival. At approximately, 5:44 p.m., the defendant arrived on the scene driving a grey-colored Mercedes SUV bearing Maryland tags. The defendant parked the Mercedes beside the UC vehicle and got into the passenger seat of the UC vehicle. Once inside, the defendant handed the UC a quantity of white rock-like substance in exchange for $1900 in pre-recorded MPD funds. The defendant then exited the UC vehicle, and the UC drove out of the area. The white rock-like substance purchased from the defendant was analyzed by the DEA laboratory, and was confirmed to be 61.4 grams of cocaine base, also known as crack cocaine.

    On or about October 13, 2005, the defendant was arrested exiting the same aforementioned grey-colored Mercedes SUV in the 1700 block of Morris Street, S.E., Washington, D.C. The SUV was then searched incident to the defendant's arrest. Found inside the truck was a white rock-like substance and six vials of an amber liquid. Both substances were

sent to the DEA for analysis. The former was determined to be 3.6 grams of cocaine base, also known as crack cocaine, and the latter was 54.5 grams of Phencyclidine (PCP).

At trial, the government would have also called a drug expert to testify that the white rock-like substance seized in this case was cocaine base, commonly known as crack cocaine, which can be consumed through smoking.

**II.     SENTENCING CALCULATION**

   A     Statutory Maximum

The maximum sentence for Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), a Class A felony, the minimum term of imprisonment is 10 years while the maximum term of imprisonment is life, and/or a fine of $ 4 million.  is incarceration for a period not more than 10 years and/or a fine of $250,000, or both. Further, under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), a term of five years of supervised release is required.

   B.     Plea Agreement and Acceptance of Responsibility

The government agrees that the defendant should receive an additional one-point adjustment for acceptance of responsibility pursuant to §3E1.1(b) of the Sentencing Guidelines. Plea Agreement at ¶ 12.

   C.     United States Sentencing Guidelines Calculation

Based on a total offense level of 31 and a criminal history category of III, the defendant's Guidelines range is 135-168 months. PSR at ¶ 51. Further, by statute pursuant to 18 U.S.C. § 3561(a)(1) the defendant is not eligible for probation. PST at ¶ 57. Because the applicable Guidelines range is in Zone D of the Sentencing Table, the defendant is not eligible for probation

under the Guidelines either.  See USSG § 5B1.1, Comment n. 2, and USSG § 5C1.1(f); PSR at ¶ 58.  The PSR writer did not find factors indicating that a downward departure from the Guidelines was warranted.  See PSR at ¶ 70.

### III.   SENTENCING RECOMMENDATION

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court ruled that the Sentencing Guidelines are advisory rather than mandatory.  However, the Court made clear that in determining the appropriate sentence for a defendant, federal courts still are required to calculate and consider the applicable Guidelines range, refer to the pertinent Sentencing Commission policy statements, and to provide restitution to victims.  Id. at 259-60.  Moreover, in determining an appropriate sentence for the defendant, federal courts also must continue to consider the need for the sentence imposed to accomplish the following sentencing objectives: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment; (4) afford adequate deterrence; (5) protect the public; and (6) effectively provide the defendant with needed educational or vocational training and medical care.  Id. at 260; see also 18 U.S.C. § 3553(a)(2).

Arguably, the applicable Sentencing Guidelines range is the most important factor for the Court to consider in sentencing the defendant because this range is calculated based upon the Sentencing Commission's careful consideration of all of the factors the Supreme Court and Congress have directed courts to consider in sentencing defendants.  The applicable Guidelines range in this case reflects an intensive objective analysis of sentences imposed on defendants similarly situated to the defendant and is a critical tool to avoid unwarranted sentencing disparities.  According to the presentence report, the defendant has an adjusted offense level of

31 and criminal history category of III, resulting in a Guidelines range of 135-168 months. Pursuant to its plea agreement with the defendant, the government does not object to a sentence of incarceration of 135 months imprisonment. Such a sentence would not only be presumptively reasonable, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553. Those factors fall into three main categories: the nature of the offense, the needs of the public, and the history and characteristics of the defendant. United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

      Turning to those factors, the defendant's offense unquestionably is serious and represents a real and present danger to the community. The defendant is a mid-level wholesale drug-dealer of a very dangerous narcotic – crack cocaine – that wreaks havoc on the lives of those who abuse it, causes despair among family members who suffer alongside the abusers, and plagues the community with the lost potential, and often criminal conduct, of the abusers. Indeed, the defendant himself is a classic example of the harm that flows from years of substance abuse. The defendant admits in the presentence report of being a drug user since he was 13, and of his present addiction to PCP. Having dropped out of school at 10th grade to sell drugs, he now has a limited education and no marketable vocational skills. Not surprisingly, he has not maintained steady, legal employment, has no assets, and cannot pay the debts he has incurred. Further, he is unable or unwilling to abide by the law, having incurred multiple drug, gun, assault, and vehicular arrests. Most serious among them: the defendant's 1992 gun murder conviction. The defendant was on parole in that matter when he incurred the present offense, thus demonstrating his lack of regard for the legal system and very low prospects for rehabilitation. A lengthy sentence of incarceration appears to be the only viable alternative available to the Court at this

point to protect the public from the defendant and to send a clear message to the defendant and other criminal elements in the community that such continual criminal conduct will not be tolerated. A sentence of 135 months of imprisonment, therefore, not only is consistent with the Sentencing Guidelines and Congress' goal of ensuring uniformity in sentencing, but also is entirely appropriate and necessary to satisfy Congress' other stated sentencing objectives in 18 U.S.C. § 3553.

Indeed, as the presentence report writer found, the defendant's record presents no meaningful basis for departing from the Guidelines range. PSR at ¶70. On this score, it should be noted, that the defendant has already received a substantial benefit for his early acceptance of responsibility. Specifically, the defendant received a three point decrease in his offense level under the Guidelines. He also avoided prosecution on the more serious charge of Unlawful Distribution of Cocaine Base within 1000 Feet of a School in violation of 21 U.S.C. § 860(a). Had the defendant not received these benefits, his offense level would have been 35, and his Guidelines range would have been 210-262 months rather than 135-168 months. Accordingly, the defendant has already received all the leniency he should under the plea. Sentencing the defendant within the Guidelines range would both serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated.

## V.     CONCLUSION

The nature of the offense, the needs of the public and the defendant's criminal history all suggest a period of incarceration at the low end of the Guidelines range of 135-168 months would be appropriate.

Respectfully,
JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610


_____
G. Michael Harvey
Assistant United States Attorney
Narcotics Section, Mass.  Bar No. 447465
555 4th Street, N.W.  #4243
Washington, DC 20001
Phone: 305-2195; Fax: 616-3782
